Good morning, Your Honors. On behalf of Maria Antonia Herrera-Estrada, Gurich-Serene, it pleases the Court that Petitioner's facts in this matter establish our eligibility for past persecution. Petitioner applied for asylum based on persecution from a group of guerrillas who tried to get Petitioner to join the Civil War against the Guatemalan government. When Petitioner was first approached in Guatemala City, he refused and fled her employment to relocate with her minor children in her parents' home. The guerrillas tracked Petitioner down, located her residence. Petitioner was physically attacked at her parents' residence by anti-government forces who demanded Petitioner to join and collaborate. At no time did the guerrillas select to recruit Petitioner's parents or children. Taking the guerrillas' demand seriously and after attempting to relocate, Petitioner realized she had to flee Guatemala, which she did, leaving her children with the parents in Guatemala. We allege, on behalf of the Petitioner, that the IJ's conclusion that these aforementioned facts did not constitute asylum is not in compliance with asylum law and the law of the circuit. Well, they tried to recruit her. Was that persecution? When she refused, yes, Your Honor. When she said, no, I don't want to join you, she had a specific political opinion that she didn't want to join us. She rejected their political opinion. She's stating, I am not in alignment with you. I disagree with you. And then they threatened her. And I think at that time she manifested a political opinion. As I was saying, in Gordon Garcia v. INS, this Court of Appeals held that the We have that in this fact. But this case goes even beyond that. Over here we are alleging that the immigration judge failed to distinguish the legal difference between fair probability standard and the well-founded fear standard, and that he used catch-all phrases blurring the distinction between clear probability and a reasonable possibility. And that's in his last page on his decision. The distinction is really between clear probability and a reasonable possibility, which he didn't make. And the Department of Justice and counsel has sent this court a case, which I received in the mail. And I'm assuming at this time that they are going to argue that, like the Supreme Court case in INS v. Ventura, that the circuit does not have either jurisdiction or the expert knowledge to make a ruling on whether the peace accords substantially altered the face of the political human rights situation in Guatemala, and that is basically solely in the jurisdiction of the BIA. I would like to raise to this court that the BIA abdicated its decision to try to streamline and basically cut back on all cases, that they refused to even review it. They made no decision. So any bearing or any argument under INS v. Ventura or any suggestion that this court should feel that it doesn't have jurisdiction is improper, because the BIA made no decision. It didn't review this case. It refused to review it. It streamlined the position. It sat on it for four years. Then it changed all its rules and affirmed the IJ's decision. And the report in this matter, if this court does find my client has shown past persecution, it is the same report that is cited in all of these in INS v. Ventura and in the case decided, which is the United States Department of State 1997 report, clearly indicates that the guerrillas are still an intimidating force, are killing people in Guatemala, and the preponderance of the evidence hasn't been changed substantially since my client left. I'd like to keep the rest for rebuttal. Thank you very much. Thank you, counsel. Good morning, counsel. Sirs, may it please the Court, my name is Elizabeth Stevens, and I represent the United States of America. In this immigration court, Maria Antonia Herrera-Estrada seeks to overturn a decision of the Board of Immigration Appeals in which the Board affirmed without opinion the results of the decision of the immigration judge. In doing such an affirmance without an opinion, the Board did, in fact, review the record and decided that the immigration judge's opinion could stand as the opinion of the agency and the decision of the agency. Streamlining does not mean not reviewed, it just means that the immigration judge's decision is correct, or at least that the results of the immigration judge's decision is correct. This case is a case that is clearly covered by INS v. Elias Zacharias, in which the Supreme Court said that attempted recruitment without more does not constitute on account of a political opinion. Now, opposing counsel does argue that there could be imputed political opinion, but the record does not show any indication whatsoever that the guerrillas did impute a political opinion to Ms. Herrera. The only evidence in the record is a statement that was made before the asylum officer, factual evidence which the petitioner submitted herself on the record, and you can see that on the page. At the hearing, she just said she refused recruitment, but I think if recollection serves, I don't have it in front of me either, she did say I'm not in alignment with you or something to that effect before the asylum officer, she said no, I have three children to take care of. Now that does not impute a political, that does not evince any type of political opinion whatsoever. It just shows that she thought that she had more important things to do in taking care of her children rather than going off and joining or collaborating with the guerrillas. The other things here, the first confrontation that she had with the guerrillas was when she was at a factory where they came and talked to the entire people in the factory during lunch. There was no indication during that time that they had any specific direct contact with Ms. Herrera herself. She then went off to another part of the country where her parents were. There is no indication in the record that the guerrillas tracked her down. There is no indication of why the guerrillas were at her mother's house. They asked her at that time if she had decided whether she was going to join because at the factory they had said we want you to join but we'll give you several days to decide what you want to do. They pushed her up against the wall, her head hit the wall and then they left. They did nothing else, nothing to her family, nothing to her children, nothing whatsoever. There's no indication from there that they imputed any type of political opinion to Ms. Herrera and they left and she decided to leave the country. As far as the well-founded fear goes, since there is no past persecution here, there's not a direct... There's a lot of wording and I gather it's probably just maybe a verbal tick or something but there are phrases like it doesn't appear that she comes up to the level of persecution. He uses the word appear two or three times. It doesn't appear she will be harmed. Those are atypical findings. They don't have the form of findings that we usually see. What's your reaction to that? My reaction to that is also based on the credibility determination of the immigration judge. The immigration judge did actually make somewhat of an adverse credibility finding although... Again, the issue before me is a question of credibility. Respondents' application appears weak and fruitless. That's not a credibility finding, would you say? He did say the sole issue before him was credibility and that her testimony was weak. Whether that's an adverse credibility finding or a finding as to the fact that she had not fulfilled her burden of proof, it's ambiguous and I do submit to that. In that case, we sort of have to discount it because our case law says that if there is an adverse credibility finding, it has to be made specifically enough so that the applicant can contest that before the BIA. In actuality, the precedents of this court go both ways. There is a 1984 case that says if there's an adverse credibility finding, you have to give deference to that. There's a lot of case law over the bridge. There's case law on both sides. The more recent one, you have to concede, the more recent one case law we have indicates that at least there... And I think it's a fair one to put the... It's one on notice that if you're going to make an adverse credibility finding, it has to be done sufficiently enough or at least clearly enough so that they're put on notice. And here, I just don't see it. I mean, the issue before me is a question of credibility. The application seems weak. I think, I mean, the stronger ground you have is that even if you believe everything she says, that the record is pretty thin on the on account of ground under Elias Zacharias. Yes, and even petitioner's argument that she evinced political neutrality. Case law of this circuit does say, and Elias Zacharias distinguishes between an imputed political opinion, a refusal to join the guerrillas on account of imputed political opinion, or indifference or risk averseness or anything else. The government would submit that wanting to take care of three children is something other than a political opinion. The immigration judge further went on to say that the... When he was determining whether she had a well-founded fear of future persecution, that the country conditions in Guatemala had changed. This is the reason that I had cited the most recent case by this circuit that deals with the 1997 country profile. And in that, this court found that the profile could be used just in and of itself to rebut a finding of past persecution. Here we don't have a rebuttal. We have a finding that there was no past... We have a finding that there's no well-founded fear. It's not a rebuttal. It's not used as a rebuttal. So the country report can be used overall to look at the whole thing to see if she has a well-founded fear. And the country report does indicate that the guerrillas had disbanded, had become a political group that was not interested in violence, even though that there were still some instances. There's also a finding that the only types of persecution that had been seen in the country on account of political opinion were those of leaders of political organizations. I think we have your argument in hand. Thanks. Thank you.  Thank you very much, Your Honors. I just want to clarify the record by reading three things from the record. Sure. One is the issue of counsel that my client had no political opinion, and she ran away with her three children. On transcript page 00070, it's very clear she had a political opinion. It had nothing to do with her children. She specifically, when she was pushed up against the wall, she said she didn't want to collaborate or join with them. It had nothing to do with her children. It's in line 15. I think the difficulty I have, and maybe you can point to somewhere else in the record, is on the page you indicate, the question, what did they say to you? Answer, well, whether I thought about it. What did you say? I told them no. And how do you get around the case law basically that said resistance to forced recruitment doesn't constitute protected political opinion? If you said I am against your movement, I might take it out of it. Do you have some other portion of the record that would make that a stronger? Well, first of all, I cite a court in Garcia, and then I go back to an 88 case on Artiega. We're saying she was tracked down. She located. We're saying what this circuit said, that where you have a specific verbal threat by the guerrillas directed at an individual whose identity and residence are known, that is sufficient to show a well-founded fear. We're saying she is being tracked. It's not by accident they found her a couple of hundred miles away. They tracked her. They sent her a letter. Insofar as the well-founded fear, I wanted to just again read from the record from what counsel is suggesting to this court. It's on page 000134. The same as the file report that's quoted in Ventura and her case. It's under the human rights situation, the last paragraph. I'll just read it. It totally contradicts what counsel said to this court. Even after the March ceasefire, guerrillas continued to employ death threats, the use of mines and explosives in civil areas, and forced recruitment of miners. Now, it goes on the next page going into far more detail as to what they're doing. I don't think the peace accord suddenly changed 40 years of bloodshed by signing of a document in Guatemala. And I don't think it changed anything to represent that my client doesn't have a well-founded fear in returning. If there is any ambiguity, I think it should go back to the BIA to review these records where they refused to. I mean, when counsel says they affirmed it by a one-panel person, they never read anything. They didn't make any analysis of basically whether my client has a well-founded fear or not. Thank you. Thank you very much. The case to the third has been submitted. And we'll proceed to the next case on the calendar, which is Mateo Pedro versus Ashcroft. Thank you.
judges: Noonan, Thomas, Bea